UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**IRMA GOLDEN,**

      **Plaintiff,**

**vs.**

**UAW-CHRYSLER NATIONAL TRAINING CENTER,**

      **Defendant**

_____/

Mary Anne M. Helveston (P37653)
HELVESTON & HELVESTON, P.C.
Attorney for Plaintiff
65 Cadillac Square
Suite 3327
Detroit, Michigan 48226
(313) 963-7220
mhelveston@helveston.com

_____/

## COMPLAINT AND JURY DEMAND

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of any other civil action, not between these parties, arising out of the transaction or occurrence alleged in this complaint that is either pending or was previously filed and dismissed, transferred, or otherwise disposed of after having been assigned to a judge in this court.

                    /s/ Mary Anne M. Helveston
                    Mary Anne M. Helveston (P37653)

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, IRMA GOLDEN, by and through her attorneys, HELVESTON & HELVESTON, P.C. and for her complaint against the Defendant, UAW-CHRYSLER NATIONAL TRAINING CENTER, states as follows:

### INTRODUCTION

1. This is an action to enforce rights pursuant to the Age Discrimination in Employment Act (ADEA), 29 USC 621 et seq,, and the Equal Pay Act (EPA), 29 USC 206(d).

### PARTIES AND JURISDICTION

2. Plaintiff IRMA GOLDEN, resides in Superior Township in Washtenaw County, Michigan.

3. Defendant, The UAW-Chrysler Skill Development & Training Program d/b/a the UAW- CHRYSLER NATIONAL TRAINING CENTER ("NTC"), is a training center operated jointly between the union and Fiat Chrysler Automobiles US LLC, an automotive company based in Auburn Hills, Michigan, and successor to the automotive company formerly known as Chrysler Group LLC, known as "FCA," doing business in Michigan.

4. At all times relevant to this complaint, Defendant , UAW- CHRYSLER NATIONAL TRAINING CENTER, (NTC") was Plaintiff, IRMA GOLDEN'S employer and IRMA GOLDEN was Defendant's employee.

5. The events giving rise to this claim occurred in Wayne County, Michigan and Macomb County, Michigan.

6. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331.

7. The amount in controversy exceeds seventy-five thousand dollars ($75,000.00) exclusive of interest, costs and attorney fees.

## BACKGROUND FACTS

8.  Plaintiff holds a Bachelor of Business Administration degree earned from from Eastern Michigan University in 1984, studied for two years in the Masters Program at Central Michigan University, earned a Train the Trainer Certification from Macomb Community College and received a Diversity Training Specialist Certification, and an EAP Certification after in-house training from Defendant.

9.  Plaintiff, a 60 year old woman, began her employment with Defendant on February 15, 1991 in security and, after six months, was promoted to the NTC Professional Staff.

10. Defendant's joint programs include: Employee Participation Program (EPA), Diversity Awareness, Sexual Harassment Prevention Program, Sexual Harassment Claim Investigation Program, Respectful -Workplace Program, Employee Assistance Program (EAP), Workplace Violence Prevention Program, Critical Incident Response Program, Paid Education Leave Program (PEL), Equal Application of Agreement Program (EAA), Health and Safety Program, Local Joint Facilitators Program, Women's Program, Future Planning Program, Admin for Technical Education Development System (TEDS), Admin for Learning Management System (LMS), various miscellaneous assignments including Skilled Trade Rationalization Program, March of Dimes, Liason to Chrysler Elementary and Cody High School.

11. In 1991, Plaintiff was promoted to the NTC Professional Staff where she provided skilled support and assistance to numerous NTC joint programs

12. From 1992 to 1995, Plaintiff served as a Communication Specialist supporting NTC Joint Programs and the Communication Department.

13. In 1995, Plaintiff became a Training Specialist, an unsalaried position, whose responsibilities included design/development of new programs, evaluation and update of existing

assigned training programs, team support for ongoing program conferences, conducting training for UAW represented and management employees, new hires at NTC, World Class Manufacturing Academy (WCMA) and FCA plant facilities and regional training centers around the country, training new trainers, coaching, evaluating other trainers and coordinating and leading round tables.

14. On July 20, 2005, Plaintiff was recognized for wearing many hats, supplying support for the joint programs and being a key team person who "surpasses any expectation we envisioned."

15. Between 2003 and 2006, plaintiff talked with direct reports Decoris Glenn, then Associated Co-director, and James Davis, then Executive Co-Director, about unequal pay and overtime pay which she had not been receiving.

16. In 2007, she discovered that a male employee with the same job responsibilities was being paid considerably more an hour than she was.

17. Between 2006 and 2017, over 20 younger people were hired and/or assigned to conduct training for NTC programs, all of whom received higher hourly pay than Plaintiff.

18. In 2012, Plaintiff met with her then-direct report, Virdell King, to request that her unequal pay be adjusted to match others in her job category.

19. In 2013, when Plaintiff met with Patrick Gibson, her direct report, to discuss an unequal pay increase, he responded by threatening to lay her off.

20. Although she met with Virdell King again in 2013 and 2014, no adjustment was made in her pay.

21. Plaintiff also met again with Virdell King and with former UAW Vice President, General Holifield in 2014 to discuss the issue of her unequal pay.

22. In 2012 and 2014, Plaintiff met with Keith Mickens, then-Executive Co-Director of NTC, to request that her pay be adjusted to match others in her job category and each time was promised a pay increase.

23. Over the years, Plaintiff had numerous discussions with other management employees about raising her hourly pay but, although they promised to adjust her pay, no action was ever taken.

24. In July 2015, Plaintiff was removed from the team without explanation.

25. All of Plaintiff's job responsibilities were reassigned to a much younger woman, Michele Adams, whom she had trained and with whom she had worked side-by-side.

26. Plaintiff was then assigned data entry work, menial work for which she was over-qualified.

27. In October 2015, Coordinator Delrico Lloyd, told her that management had advised him that they wanted people to retire and asked her if she had thought about retiring.

28. Concerned that she had been demoted because of her age, Plaintiff informed her program counterpart, Helen Scott, FCA Executive, of this conversation.

29. Between November and December 2016, Plaintiff met with Keith Mickens, former Executive Co-Director, to discuss the lack of progress in addressing her requested review of her pay status and her request for over-time pay and was told by him that it had been discussed and acknowledged with Mike Brown, (retired FCA Executive) but he had "kicked the can down the road."

30. On December 11, 2016, Plaintiff met with Coordinator Delrico Lloyd to inquire as to why she had been eliminated from the team and was told that she had done nothing wrong, that the directive to remove her from her responsibilities had come down months before.

31. In January 2016, when Plaintiff met with FCA Executive Lamar Harris regarding her removal from the team, she was told that he had discussed the issue with Miguel Foster, UAW Executive, and was told that the directive had come from above him.

32. At that time, she learned that Defendant was offering incentives to leave to older employees in an attempt to get them to retire and replace them with younger employees.

33. Depressed by her greatly reduced status and humiliated by having to perform job duties for which she was over-qualified, Plaintiff felt that she had no alternative but to submit her resignation, effective May 31, 2017.

## COUNT I:

## AGE DISCRIMINATION

34. Plaintiffs hereby incorporate by reference paragraphs one (1) through thirty-three (33) as if set forth more specifically, paragraph by paragraph.

35. The Age Discrimination in Employment Act of 1967 (ADEA) prohibits employment discrimination on the basis of age. 29 USC 621 et seq.

36. Under the ADEA an aggrieved individual must file a charge of discrimination with the EEOC.

37. Plaintiff filed a charge of discrimination with the EEOC and received her Right to Sue letter dated June 12, 2017. (see attached)

38. At all times relevant to this Complaint, Defendant was Plaintiff's employer and Plaintiff was Defendant's employee.

39. Defendant violated the ADEA when it paid Plaintiff a lower hourly wage than similarly situated younger employees.

40. Defendant also violated the ADEA when it removed Plaintiff from the team and assigned all of her job responsibilities to a much younger employee.

41. Defendant also violated the ADEA when it assigned Plaintiff to menial jobs, making her working conditions so intolerable that she quit her job, a constructive discharge.

42. As a direct and proximate result of Defendants' violation of the ADEA, Plaintiff has suffered loss of income, damage to her professional reputation, depression, emotional distress, mental anguish, humiliation and embarrassment, and the physical manifestations thereof, and will so suffer in the future.

## COUNT II:

## RETALIATION

43. Plaintiff hereby incorporates by reference paragraphs one (1) through forty-two (42) as if set forth more specifically, paragraph by paragraph.

44. The ADEA prohibits retaliation for opposing any unlawful practices under the Act. 29 USC 623(d).

45. An employee need not file a formal complaint to be protected from retaliation since the assertion of statutory rights is sufficient to trigger protection under the ADEA.

46. Defendant violated the ADEA by retaliating against Plaintiff for her numerous complaints that her hourly pay was lower than that of similarly situated younger employees, when it removed her from the team, gave her job responsibilities to a much younger employee and assigned her menial clerical work for which she was over-qualified.

47 As a direct and proximate result of Defendants' retaliation in violation of the ADEA, Plaintiff has suffered loss of income, damage to her professional reputation, depression,

emotional distress, mental anguish, humiliation and embarrassment, and the physical manifestations thereof, and will so suffer in the future.

## COUNT III:

## VIOLATION OF THE EQUAL PAY ACT ("EPA")

48. Plaintiff hereby incorporates by reference paragraphs one (1) through forty-seven (47) as if set forth more specifically, paragraph by paragraph.

49. The Equal Pay Act (EPA) prohibits an employer from discriminating against an employee based on sex by paying lower wages to one sex than the other within the same establishment for equal work on jobs the performance of which requires equal skill, effort and responsibility and which are performed under similar working conditions. 29 USC 206(d)(1).

50. Defendant violated the EPA for years by paying her a lower hourly wage than a similarly situated male.

51. As a direct and proximate result of Defendants' violation of the EPA, Plaintiff has suffered loss of income, damage to her professional reputation, depression, emotional distress, mental anguish, humiliation and embarrassment, and the physical manifestations thereof, and will so suffer in the future.

## DAMAGES

52. As a direct and proximate result of Defendant's unlawful employment practices and violations of her statutory rights by Defendant, Plaintiff IRMA GOLDEN has sustained and continues to sustain loss of earnings, seniority, fringe benefits, promotional opportunities and/or upgrading and the accompanying decision-making responsibilities, professional standing and status in the community, suffered irreparable harm to her career and upward mobility, the loss of

professional growth and development and the equal opportunity to pursue his gainful occupation, and will so suffer in the future.

53. As a direct and proximate result of Defendant's unlawful employment practices and violations of statutory law, Plaintiff IRMA GOLDEN has sustained and continues to sustain damages by way of extreme mental anguish, outrage, emotional distress, severe anxiety about her future ability to support herself and her family, painful humiliation and embarrassment among friends and co-workers, undermining of self esteem and motivation and loss of the ordinary pleasures of everyday life.

## RELIEF REQUESTED

54 Plaintiff IRMA GOLDEN respectfully asks this Court for the following equitable and legal relief:

    a. Declare that Plaintiff IRMA GOLDEN has been a victim of illegal age discrimination, retaliation and violation of the EPA.

    b. Award Plaintiff IRMA GOLDEN compensatory damages.

    c. Award Plaintiff IRMA GOLDEN costs and attorney fees.

    d. Grant such additional relief that is appropriate and just.

Respectfully submitted,
HELVESTON & HELVESTON, P.C.

By: /s/ Mary Anne M. Helveston
Mary Anne. M. Helveston,
Attorney for Plaintiffs

Dated: September 12, 2017

## JURY DEMAND

Plaintiff IRMA GOLDEN , by and through her attorneys, hereby demands a trial by jury.

Respectfully Submitted,
HELVESTON & HELVESTON, P.C.

By:/ /s//Mary Anne M. Helveston
Mary Anne M. Helveston (P37653)
Attorney for Plaintiffs

September 12, 2017

EEOC Form 161 (11/16) **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: Irma Golden<br>1585 Sheffield Drive<br>Ypsilanti, MI 48198 | From: **Detroit Field Office**<br>**477 Michigan Avenue**<br>**Room 865**<br>**Detroit, MI 48226** |

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 471-2017-01970 | **Angelique M. Moreno,**<br>**Investigator** | (313) 226-2365 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Michelle Eisele,
District Director

6/12/17 *(Date Mailed)*

Enclosures(s)

cc: **Lamar Harris**
**Co-Director**